UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

MICHAEL L.[1],                            )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      CIVIL NO.  2:20cv238
                                          )
ANDREW SAUL,                              )
Commissioner of Social Security,          )
                                          )
            Defendant.                    )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for  Disability

Insurance Benefits (DIB), and a period of disability, as provided for in the Social Security Act. 42

U.S.C. § 423(a), § 1382c(a)(3).  Section 405(g) of the Act provides, inter alia, "[a]s part of his

answer, the [Commissioner] shall file a certified copy of the transcript of the record including the

evidence upon which the findings and decision complained of are based.  The court shall have the

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

or reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

      The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

_____

[1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.      The claimant has not engaged in substantial gainful activity since July 31, 2015 (20 CFR 404.1571 *et seq.*)

3.      The claimant has the following severe impairments: degenerative joint disease of the bilateral shoulders, lumbar spondylosis, and obesity (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry and push and/or pull no more than fifty (50) pounds occasionally and up to twenty-five (25) pounds frequently; to stand and or walk for about six (6) hours of an eight-hour workday and to sit for about six (6) hours of an eight-hour workday; occasionally reach overhead with both upper extremities and frequently reach in all other directions with both upper extremities; frequently climb ramps and stairs, as well as frequently balance, stoop, kneel, and crouch; never crawl or climb ladders, ropes, or scaffolds; and never work at unprotected heights.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on November 14, 1963 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2015, through the date of this decision (20 CFR 404.1520(g)).

(AR. 23- 29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff filed his opening brief on March 1, 2021.  On April 12, 2021, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on April 26, 2021. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In early 2014 Plaintiff presented to Dr. Thomas Kay with right shoulder pain which began

4

months before. (AR 289.) An MRI of the right shoulder revealed moderate to marked supraspinatus tendinosis with irregular partial interstitial tearing, minute full-thickness tear of the anterodistal tendon margin, and moderate acromioclavicular joint osteoarthritis. (AR 293.) On January 30, 2014, Plaintiff underwent surgery on his right shoulder, including rotator cuff repair and subacromial decompression. (AR 303.) Plaintiff attended physical therapy in February and March 2014. (AR 307-42.) However, on March 19, 2014, the therapist requested Plaintiff be re-evaluated by Dr. Kay because Plaintiff was having a hard time establishing full range of motion. (AR 338.) Dr. Kay noted Plaintiff was very tense and guarded against passive motion. (*Id*.) Plaintiff was limited to 90 degrees elevation and had significant limits with external rotation. (*Id*.) Dr. Kay assessed right shoulder adhesive capsulitis. (AR 339.) He gave Plaintiff injections in his right shoulder. (*Id*.) He prescribed Mobic and told Plaintiff to continue physical therapy. (AR 339.)

Plaintiff underwent more physical therapy from March 2014 through April 16, 2014. (AR 344-68.) On April 16, 2014, Plaintiff returned to Dr. Kay and received another injection in his right shoulder. (AR 372.) He continued physical therapy in April and May 2014. (AR 375-87.) On May 5, 2014, Plaintiff returned to Dr. Kay. He still had right shoulder pain and was struggling to regain range of motion. (AR 390.) He had 60-90 degrees forward flexion, 90-110 degrees abduction, 30-45 degrees external rotation, and 15 degrees internal rotation. (AR 392.) He had tenderness at the extremes of motion. (*Id*.) An impingement test was positive in his right shoulder. (*Id*.) Dr. Kay recommended additional right shoulder surgery. (AR 392-93.)

On May 15, 2014, Plaintiff underwent arthroscopic lysis of adhesions with manipulation on his right shoulder. (AR 401.) Plaintiff returned to physical therapy in May and June 2014. (AR

5

396-439.) On June 25, 2014, Plaintiff saw Dr. Kay. Plaintiff reported daily improvements in his right shoulder and examination revealed full range of motion. (AR 441.) On October 10, 2014, Plaintiff told Dr. Kay he had good range of motion but some soreness intermittently. (AR 462.) He was able to complete his duties at work. (*Id*.) He had full range of motion of his right shoulder but tenderness at the extremes. (AR 464.) Dr. Kay told Plaintiff to continue home exercises and return as needed. (*Id*.)

On January 7, 2015, Plaintiff returned to Dr. Kay with reports of left shoulder pain. (AR 466.) His pain had started about a year prior and had not resolved. (*Id*.) He had tenderness in his shoulder and throughout the arc of motion, limited range of motion in all directions, and positive impingement test. (AR 468.) An x-ray revealed minimal degenerative changes. (*Id*.)

On January 9, 2015, an MRI revealed a horizontal partial interstitial splitting tear within the mid to anterior infraspinatus tendon, partial undersurface tear of the anterodistal supraspinatus tendon, moderate surrounding tendinosis, and moderate acromioclavicular joint osteoarthritis. (AR 470.) Plaintiff underwent left shoulder surgery on February 5, 2015, consisting of rotator cuff repair, labral debridement, and subacromial decompression. (AR 478.) He attended physical therapy for his left shoulder from February 2015 through March 2015. (AR 497-531.)

On March 30, 2015, Plaintiff returned to Dr. Kay. He reported recent severe pain and stiffness. (AR 533.) Examination revealed left shoulder tenderness and moderate limits in range of motion in all planes, with tenderness throughout arc of motion. (*Id*.) Dr. Kay gave Plaintiff an injection in his left shoulder. (AR 534.) Plaintiff returned to physical therapy throughout April and May 2015. (AR 536- 64.) His pain was exacerbated when in mid-April he reached for a tube at the drive through bank. (AR 545; 547.) Shortly thereafter, he reported increased pain and tightness in

6

both shoulders due to washing his car. (AR 549.) During physical therapy, examinations

demonstrated tenderness, decreased range of motion in both shoulders, worse on the left, and

reduced strength in both shoulders, worse on the left. (AR 557; 563.)

On May 8, 2015, Plaintiff saw Dr. Kay. He reported continued intermittent pain, stiffness,

and limited motion in his left shoulder, (AR 565.) He had not gotten much relief from the

injection. (*Id*.) He did not feel he was progressing anymore in physical therapy. (*Id*.) Examination

revealed tenderness in the left shoulder. Plaintiff had decreased range of motion, including 30 to

60 degrees forward elevation, 30 to 60 degrees abduction, and tenderness throughout the arc of

motion. (AR 567.) Dr. Kay assessed left shoulder adhesive capsulitis. (*Id*.) He recommended a

second surgery on the left shoulder. (*Id*.) On May 4, 2015, Plaintiff underwent left shoulder

arthroscopic surgery with lysis of adhesions with manipulation and rotator cuff repair. (AR 576.)

Plaintiff returned to physical therapy from June 2015 through August 2015. (AR 578-654.) On

August 10, 2015, Plaintiff was discharged from physical therapy because he wanted to begin

services at another facility and with another physician. (AR 653.) At discharge, Plaintiff

demonstrated 135 degrees flexion and 150 degrees abduction in his right shoulder, and 130

degrees flexion and 130 degrees abduction in his left shoulder. (AR 654.)

Plaintiff sought a second opinion about his bilateral shoulder pain on April 27, 2015, with

Dr. Jeffrey Staron. He reported stiffness and tightness. (AR 723.) Examination revealed swelling

in the left shoulder and tenderness in the subacromial space and bicipital groove. (*Id*.) He had

reduced range of motion, including 90 degrees flexion, 70 degrees abduction, 20 degrees external

rotation, and internal rotation to the iliac. (*Id*.) He had reduced strength (4+/5) with abduction and

external rotation. (*Id*.) Dr. Staron assessed left adhesive capsulitis. (*Id*.) He recommended Plaintiff

7

continue physical therapy. (*Id.*) On June 23, 2015, Plaintiff returned to Dr. Staron as he wanted to

transfer care to Dr. Staron. (AR 719.) The physician recommended Plaintiff continue physical

therapy, per Dr. Kay's recommendation, and return in 5 weeks. (*Id.*) On August 4, 2015, Plaintiff

returned to Dr. Staron. He reported pain in his bicep, especially after therapy and home exercises.

(AR 715.) Range of motion testing of the left shoulder revealed 140 degrees flexion, 90 degrees

abduction, 20 degrees external rotation, and internal rotation to the sacrum. (AR 716.) Plaintiff

had reduced strength in the left shoulder with abduction (4/5), external rotation (4/5) and internal

rotation (4+/5). (*Id.*)

On September 2, 2015, Plaintiff began treatment with Dr. Keith Pitchford, who is a

physician at the same office as Dr. Staron. Notes indicate Plaintiff wanted to transfer to his care.

(AR 712.) Thereafter, Plaintiff was treated by Dr. Pitchford. During examination, Plaintiff had

tenderness in his left shoulder in the acromioclavicular joint, glenohumeral joint, and subacromial

space. (AR 713.) He had reduced range of motion in both shoulders, including 110 degrees

forward flexion on the left and 140 degrees on the right, 70 degrees abduction on the left and 90

degrees on the right, 20 degrees external rotation on the left and 35 degrees on the right. (*Id.*) He

had reduced strength in both shoulders (4- to 4+/5). (*Id.*) Both Hawkins and Neers tests were

positive on the left. (*Id.*) Dr. Pitchford prescribed Etodolac. (AR 714.) On September 30, 2015,

Plaintiff reported pain in both shoulders. (AR 709.) Examination revealed tenderness in his right

shoulder, including his subacromial bursa and glenohumeral joint region. (AR 710.) Plaintiff still

had reduced range of motion in both shoulders, including 120 degrees flexion on the left and 140

degrees on the right, 75 degrees abduction on the left and 85 degrees on the right, and 30 degrees

external rotation on the left and 45 degrees on the right. (*Id.*) Hawkins and Neers tests were

positive, this time on the right. (*Id*.) Plaintiff had reduced strength in both shoulders (3 to 5-/5). (*Id*.)

On October 26, 2015, an MRI of Plaintiff's right shoulder revealed chronic rotator cuff repair with multiple sclerosis in the head of the humerus, subpraspinatus calcific tendinitis, and type II acromion process with the tip indenting the supraspinatus tendon with a bursal cyst. (AR 666; 720.) Plaintiff followed-up with Dr. Pitchford on October 28, 2015. He reported pain in both shoulders. (AR 706.) Examination revealed tenderness in his left shoulder at the acromioclavicular joint, subacromial space, and bicipital groove. (AR 707.) He had reduced left shoulder strength (4 to 4+/5). (*Id*.) He had reduced range of motion in the left shoulder, including 160 degrees forward flexion, 75 degrees abduction, and 45 degrees external rotation. (*Id*.) On November 30, 2015, Plaintiff reported continued pain in both shoulders. (AR 703.) Examination revealed 155 degrees forward flexion of the left shoulder and 135 degrees in the right shoulder, 90 degrees abduction of the left shoulder and 75 degrees on the right, and 65 degrees external rotation on the left and 35 degrees on the right. (AR 704.) He had decreased strength in both shoulders (4 to 4+/5). (*Id*.)

On January 6, 2016, Plaintiff's examination revealed tenderness in Plaintiff's left shoulder in the glenohumeral joint region, reduced left shoulder strength (4 to 4+/5), and decreased range of motion of the left shoulder, including 155 degrees forward flexion, 85 degrees abduction, and 55 degrees external rotation. (AR 701.)

On March 2, 2016, Plaintiff reported bilateral shoulder pain. He had aggravated his pain by shoveling. (AR 697-98.) Examination revealed tenderness in both his right and left shoulder glenohumeral joint regions. (AR 698.) He had reduced strength in both shoulders (4 to 4+/5). (*Id*.) He still had reduced range of motion of both shoulders. (*Id*.) He had 155 degrees forward flexion

9

on the left and 145 degrees on the right, 90 degrees abduction on the left and 85 degrees on the right, and 65 degrees external rotation on the left and 55 degrees on the right. (*Id*.)

On April 13, 2015, Plaintiff reported pain in both shoulders. (AR 694.) Left shoulder pain was worst with range of motion. (AR 695.) On January 17, 2017, Plaintiff continued to report pain in both shoulders. (AR 691.) His pain was aggravated by lifting, pushing, pulling, and range of motion. (AR 692.) Examination revealed tenderness in both shoulders at the bicipital groove. (*Id*.) He had reduced strength in both shoulders (4/5). (*Id*.) Range of motion testing demonstrated 130 degrees forward flexion in both shoulders, 90 degrees abduction in both, 0 degrees external rotation on the left and 40 degrees on the right. (*Id*.)

On December 15, 2017, Plaintiff returned to Dr. Pitchford with pain in both shoulders. (AR 686.) He reported he had been continuing to take Etodolac for pain relief. (*Id*.) About a month or two prior, he performed a large amount of physical activity around his yard and garage and subsequently had pain in both shoulders for about 2 days. That pain resolved for about two weeks then returned. (*Id*.) Since then, he had been having intermittent pain in both shoulders. (*Id*.) He had irritating numbness in both shoulders, and pain and spasms his shoulder blades. (*Id*.) Examination of Plaintiff's cervical spine revealed positive stretch signs and positive Spurling's tests. (AR 687.) Examination of his shoulders revealed reduced range of motion in both, including 140 degrees forward flexion on the left and 170 degrees on the right, 90 degrees abduction bilaterally, and 20 degrees external rotation on the left and 40 degrees on the right. (AR 686.) Dr. Pitchford diagnosed cervicalgia and adhesive capsulitis of both shoulders. (AR 687.)

On January 16, 2018, Plaintiff returned to Dr. Pitchford. He reported shoulder pain with activity. (AR 680.) Examination revealed symmetric, but reduced forward flexion, abduction, and

external rotation, and decreased strength (4/5), in his shoulders. (*Id.*) Dr. Pitchford diagnosed left cervical radiculopathy with arthrofibrosis, impingement of both shoulders, and adhesive capsulitis in both shoulders. (AR 681.)

Plaintiff has also suffered from long-standing back pain, dating back to at least 2012. (AR 668; 670.) An MRI of his lumbar spine from 2012 demonstrated multi-level degenerative changes, most prominent at L4-5. (AR 668.) At that time he was diagnosed with lumbosacral spondylosis and degeneration of the lumbar/lumbosacral intervertebral disc. (AR 669-70.) Since 2015 Plaintiff has continued to report suffering from back pain. In April 2019 Plaintiff was given a TENS unit and lumbar brace by Dr. Barry Ring. (AR 733.) Treatment notes since 2015 document Plaintiff had a body mass index (BMI) of 30 or more, indicating he was obese.

On August 21, 2015, Dr. Thomas Carlson wrote a letter regarding Plaintiff's limitations and ability to continue to work. Dr. Carlson indicated that despite two surgeries on each shoulder Plaintiff was left with bilateral frozen shoulders and particularly diminished range of motion in the left shoulder. (AR 663.) Due to pain and decreased range of motion in his shoulders, Plaintiff could not dress himself and had to depend on his wife to put his shirts on and take them off, is unable to make his bed or perform other household chores, and is unable to do yardwork. (*Id.*) Dr. Carlson also noted that Plaintiff also suffers from chronic disc disease and suffers flares in his pain two to three times per week. (*Id.*) Dr. Carlson opined that due to Plaintiff's severe shoulder issues, he would not be able to return to structural iron work, which required heavy lifting. (*Id.*) He added that due to disc disease Plaintiff is unable to sit for any length of time. (*Id.*)

On March 10, 2018, Plaintiff underwent a consultative examination with Dr. M. Siddiqui, at the request of the Agency. Plaintiff reported lower back pain and pain in both shoulders. (AR

11

732.) He reported difficulty lifting more than 15 pounds and raising his arms over his head. (*Id*.) His back pain sometimes radiated into his right hip. (*Id*.) He reported he had difficulty sitting in one place more than 20 minutes, or standing more than 5 minutes at one time. (*Id*.) He had difficulty walking more than 2 blocks at one time. (*Id*.) Upon examination, Dr. Siddiqui noted Plaintiff had tenderness in both shoulders. (AR 733.) He had reduced range of motion in both shoulders. (AR 735.) He had 125 degrees forward flexion on the left and 135 degrees on the right, 75 degrees abduction on the left and 135 on the right, 25 degrees adduction on the left and 30 on the right, 70 degrees external rotation on the left and 80 on the right, and 75 degrees internal rotation on the left and 80 on the right. (AR 735.) Plaintiff also had tenderness in his lumbar spine. (AR 733.) Straight leg raise tests were positive, bilaterally, causing low back pain at 65 degrees. (*Id*.) Plaintiff had reduced range of motion in his lumbar spine, including 80 degrees forward flexion, 20 degrees extension, and 20 degrees right and left lateral flexion. (AR 735.) He had some difficulty squatting. (AR 733.) He had reduced reflexes (1+). (*Id*.) Plaintiff was also sent for an x-ray of his lumbar spine on March 12, 2018. That demonstrated end plate osteophytes involving L1 through L5 and reduced disc space between L1-2, L2-3, and L4-5. The radiologist assessed lumbar spondylosis. (AR 737.)

On March 20, 2018, a non-examining state agency physician, Dr. J. Eskonen, opined Plaintiff could lift/carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk 6 hours, and sit 6 hours, in an 8-hour workday. (AR 57-58.) Plaintiff could frequently climb ramps and stairs, and frequently stoop, kneel, and crawl. (AR 58.) He could occasionally climb ladders, ropes, and scaffolds, and occasionally crouch. (*Id*.) He could frequently reach overhead with his right arm, occasionally with his left arm. (AR 59.) On July 23, 2018, another non-examining state

12

agency physician, Dr. M. Ruiz, found the same limits as Dr. Eskonen, with the exception that he did not limit Plaintiff's ability to kneel, and found Plaintiff could only frequently balance. (AR 68-70.)

In support of remand, Plaintiff first argues that the ALJ's analysis of Plaintiff's subjective reports was legally insufficient.  When assessing a claimant's statements, the ALJ must undertake a two-step process. First, he must consider whether the claimant has underlying medically determinable physical or mental impairments which could reasonably be expected to produce the symptoms, such as pain. If yes, then the ALJ must evaluate the intensity and persistence of the claimant's reported symptoms to determine the extent to which those symptoms limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1529; SSR 16-3p; *Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001)("Where medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations and must examine the full range of medical evidence as it relates to the claim."); *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994).

In the present case, the ALJ outlined that two-step analysis and noted he was required to abide by that process. (AR 24.) He then gave a very short (4 sentences) summary of Plaintiff's testimony followed by his finding that "[w]hile the statements about the intensity, persistence, and limiting effects of the claimant's symptoms have been considered carefully; the record in its entirety, including the objective evidence, is inconsistent with a finding of disability." (AR 24.) The ALJ then went on to summarize some of the evidence in the record. (AR 24-26.) Plaintiff notes, however, that nowhere did the ALJ indicate any reasons for discounting Plaintiff's statements or for finding that Plaintiff's statements about his symptoms and resulting limitations were

inconsistent with any evidence in the record. "In evaluating an individual's symptoms, it is not sufficient for our adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) supported or consistent….' The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. Plaintiff argues that the ALJ did exactly what is prohibited, in that he provided a single, conclusory statement, without any explanation, to support his conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002)(holding that the ALJ's evaluation must contain "specific reasons" for the credibility finding and that the ALJ is not permitted to merely recite factors or rules outlined in the regulation); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003); *Golembiewski v. Barnhart,* 322 F.3d 912, 915 (7th Cir. 2003).

In function and disability reports Plaintiff reported restricted daily activities. He had pain putting on his shirt. (AR 179.) It was hard to wash his back. (*Id*.) He reported difficulty shaving due to weakness in his arms. (AR 175, 179, 194.) He could prepare his own meals but they were simple meals like frozen dinners or things he could microwave. (AR 180.) He did very few household chores. (*Id*.) He was unable to perform yardwork due to pain and weakness in his shoulders and lower back. (AR 175, 194.) When he shopped it was for only about 10 minutes at a time. (AR 181.) Pain affected his sleep. (AR 179.) His prior hobbies included hunting and fishing, but he was no longer able to do those activities. (AR 171.) He could no longer launch his fishing boat on his own. (AR 182.) Most of his days were spent watching television and reading books.

14

(*Id.*) Plaintiff maintains that the ALJ was required to consider that Plaintiff's activities were fairly restricted, which supported Plaintiff's stated limits. *Zurawski*, 245 F.3d at 887-88 (ALJ should have considered that claimant's activities were significantly limited, which supports her allegations of symptoms and limits).

Plaintiff points out that he underwent significant treatment, including, but not limited to, four surgeries, months upon months of physical therapy, multiple injections into his shoulders, and medications, all in an attempt to get relief from his symptoms. He sought second opinions about his treatment and changed doctors. He also obtained a back brace and TENS unit to relieve pain. Plaintiff argues that these persistent attempts to get relief bolsters his reports about his symptoms and limits. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)("What is significant is the improbability that Carradine would have undergone the pain-treatment procedures that she did, merely to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits…"); *see also*, SSR 16-3p (persistent attempts at relief may indicate symptoms are distressful, intense, and persistent). In the present case, the ALJ outlined Plaintiff's treatment, in summary, but did not indicate if, or how, he considered the treatment when evaluating Plaintiff's reported limitations. *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)(no logical bridge where the ALJ recited the medical evidence but did not analyze it).

Plaintiff further points out that he had a lengthy work record and made significant earnings as an iron worker for several years prior to alleging he became disabled. ( AR 146.) Plaintiff contends that because he worked for many years and made significant money, more weight should be given to his statements that he can no longer work. *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016)("a 'claimant with a good work record is entitled to substantial credibility when claiming an

15

inability to work because of a disability.'"); *see also, Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); *Alesia v. Astrue*, 789 F.Supp.2d 921, 934 (N.D. Ill., 2011). Plaintiff went back to work after his first two surgeries and claims that his persistence at trying to work, despite physical limitations and pain, supports his claim that he is no longer able to do so. *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014)("dogged efforts to work beyond her physical capacity" is "highly relevant" to credibility of her statements).

Plaintiff argues that since his primary limiting symptom was pain in his shoulders and back, the ALJ should have asked him about his pain, including what aggravated it, what relieved it, the effectiveness of medications or other measures to relieve pain, and other treatments (besides medications) that might relieve his pain. However, the record contains no discussion of those factors related to Plaintiff's pain and no indication of how that evidence factored into the ALJ's analysis of Plaintiff's statements. *Zurawski*, 245 F.3d at 887-88.

Plaintiff concludes that the ALJ's failure to consider any of the relevant factors or explain why any of the evidence in the record undermined Plaintiff's statements renders the ALJ's analysis of Plaintiff's statements legally insufficient, and makes the ALJ's decision to discount Plaintiff's statements unsupported by substantial evidence. 20 C.F.R. § 404.1529 and SSR 16-3p; *Zurawski, supra*.

In response, the Commissioner argues that the ALJ considered the relevant factors and he outlines the ALJ's discussion. However, the Commissioner points to the ALJ's summary of the evidence. A summary is not an analysis, as it does not explain <u>why</u> the evidence summarized undermined Plaintiff's statements about his symptoms or limitations, or which statements were inconsistent. *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)(no logical bridge where the

16

ALJ recited the medical evidence but did not analyze it). The Commissioner also makes attempts to point to specific evidence the ALJ summarized, and explain why that evidence undermined Plaintiff's statements. However, that analysis is not found in the ALJ's decision. The Commissioner is not permitted to advance an analysis to explain the ALJ's conclusion which the ALJ did not provide himself. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014)(collecting cases concerning *Chenery* violations indicating the Commissioner may not advance reasons to support the ALJ's decision which the ALJ did not advance themselves), citing *SEC v. Chenery Corp*., 318 U.S. 80, 87-88 (1943).

The Commissioner argues that the ALJ explained that the treatment Plaintiff underwent for his shoulders provided significant improvement. However, the ALJ only noted Plaintiff's improvement when discussing his reasons for discounting Dr. Carlson's opinions. (AR 28.) The ALJ did not discuss or refer to that evidence when he indicated that Plaintiff's statements were not entirely consistent with the evidence. Therefore, again, the Commissioner is attempting to provide an analysis where the ALJ did not do so. *Hanson*, 760 F.3d at 762.

The Commissioner argues that the ALJ recounted Plaintiff's reports about his activities. However, recounting those activities does not give any indication of whether the ALJ found Plaintiff's activities supported or undermined Plaintiff's reported symptoms and limitations. *Craft*, 539 F.3d at 677-78. The Commissioner also argues that the ALJ considered Plaintiff's treatment history. However, outlining Plaintiff's treatment history, in summary, does not indicate whether it supported Plaintiff's statements or undermined them. *Craft, supra*.

The Commissioner concedes that the ALJ did not acknowledge Plaintiff's significant work history when evaluating Plaintiff's statements, but argues the ALJ was not required to do so. It is

correct that the ALJ was not required to analyze any one particular factor. However, he was required to consider and discuss some of the regulatory factors and explain how those led to his conclusion that Plaintiff's statements about his symptoms and limitations were not entirely consistent with the evidence, yet the ALJ failed to discuss any of the factors.

In light of all of the above, this Court finds that the ALJ's discussion of Plaintiff's subjective reports was legally insufficient, requiring remand on this issue.

Next, Plaintiff argues that the ALJ's analysis of the opinion evidence was legally insufficient and the weight given to the opinions was not supported by substantial evidence. Dr. Thomas Carlson examined Plaintiff and opined that due to pain and decreased range of motion in his shoulders, and chronic disc disease causing back pain, Plaintiff could not return to work as an iron worker. Dr. Carlson also opined that Plaintiff could not sit for any length of time. (AR 663.) The ALJ indicated that he was "not persuaded" by Dr. Carlson's opinions. (AR 28.) The state agency medical consultants, Drs. Eskonen and Ruiz, opined that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand/walk 6 hours, and sit 6 hours, in an 8-hour workday, but that he could only occasionally reach overhead with his left arm and frequently with his right arm. They also offered other postural limits. (AR 57-59, 68-70.) The ALJ indicated he was "persuaded by" those doctors' opinions. (AR 27.)

When considering opinions, the ALJ must consider the factors listed in 20 C.F.R. § 404.1520c, including supportability, consistency, relationship with the claimant, specialization, and "other factors". The Regulation indicates the most important factors are supportability and consistency and that the ALJ must "explain how [they] considered the supportability and consistency factors…in [the] determination or decision." 20 C.F.R. § 404.1520c(2). The ALJ may

explain how he considered the other three factors, but is not required to do so. *Id*. However, when the ALJ finds that the available opinions are equally supported and equally consistent, the ALJ "will articulate how [they] considered the other most persuasive factors…in [the] determination or decision." 20 C.F.R. § 404.1520c(3).

Here, the ALJ indicated, generally, that the state agency medical consultants' opinions were supported by the evidence they cited and consistent with the record as a whole. (AR 27.) However, the ALJ did not point to any specific evidence that the state agency doctors cited which supported their opined limits. He also did not point to any evidence in the record that was consistent with those doctors' opinions. Plaintiff argues that the ALJ is not permitted to make a conclusory statement that the doctors' opinions were supported and consistent with evidence in the record, without pointing to specific evidence to explain that conclusion. *Moore*, 743 F.3d at 1121.

Similarly, in evaluating Dr. Carlson's opinions, the ALJ summarized the doctor's letter and opinions, then concluded that Dr. Carlson's opinions were not supported "by enough" objective evidence to be persuasive and not consistent with the record as a whole. (AR 28.) However, as the ALJ noted, Dr. Carlson indicated that he based his opinions on objective evidence, including Plaintiff's surgeries, physical therapy, and diminished range of motion. (*Id.*) The ALJ did not explain why that was not "enough" objective evidence. He also did not explain why other evidence in the record was not consistent with Dr. Carlson's opinions.

Plaintiff points out that he consistently reported problems lifting much weight, including that he could only lift 10 to 15 pounds, due to shoulder pain. Additionally, examinations since Plaintiff's surgeries frequently noted both decreased range of motion of Plaintiff's shoulders and

decreased strength. Imaging of Plaintiff's right shoulder, even after surgeries, demonstrated a chronic right rotator cuff repair with multiple sclerosis in the head of the humerus, supraspinatus calcific tendinitis, and type II acromion process with the tip indenting the supraspinatus tendon with a bursal cyst. (AR 666.) A post-surgical MRI of his left shoulder does not appear to have been done or is not in the record. However, imaging of his left shoulder prior to surgery demonstrated a horizontal partial interstitial splitting tear within the mid to anterior infraspinatus tendon, partial undersurface tear of the anterodistal supraspinatus tendon, moderate surrounding tendinosis, and moderate acromioclavicular joint osteoarthritis. (AR 470.) The left shoulder surgery was to fix the tears. Thus, at a minimum, the arthritis in the acromioclavicular joint would arguably still remain. (AR 478.) X-rays of Plaintiff's lumbar spine revealed end plate osteophytes involving L1 through L5 and reduced disc spaces at L1-2, L2-3, and L4-5, demonstrating lumbar spondylosis. (AR 737.)

Yet, the ALJ did not explain why this evidence was not consistent with Dr. Carlson's opinions. The ALJ noted that Dr. Carlson's examination notes were not included with his opinions. (AR 28.) However, lack of notes is not an inconsistency and does not inherently undermine Dr. Carlson's opinions. *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014)(lack of detailed treatment notes to back up doctor's opinion are "insufficient grounds" for disbelieving the doctors' opinion; *see also Israel v. Colvin*, 840 F.3d 432, 438-39 (7th Cir. 2016). Plaintiff contends that if the ALJ thought he needed more information about Dr. Carlson's opinions, particularly his examination notes, the ALJ should have re-contacted the doctor for that information. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)("ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily

discernable").

The ALJ also opined that Plaintiff's abilities improved with physical therapy. (AR 28.) However, while some notes demonstrate improvement with physical therapy, there are also notes that document set-backs. Plaintiff correctly argues that the ALJ is not permitted to consider times when Plaintiff had some improvement in signs or symptoms, and ignore those set-backs in signs or symptoms. *Scrogham v. Colvin,* 765 F.3d 685, 699 (7th Cir.2014)(ALJ's "…apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal."); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The ALJ also did not quantify any "improvement".  It is not clear if the ALJ was referring to Plaintiff's subjective reports that he felt improved pain, or if he was referring to therapy notes or doctors' notes indicating improvement in objective signs such as range of motion or strength.  Additionally, even if Plaintiff had improved in one or more of those areas, that does not mean Dr. Carlson's opinions were undermined by any such improvement. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014)(finding that improvement does "not give us an accurate description of [claimant's] true neurological state… The key is not whether one has improved…, but whether they have improved enough to meet the legal criteria of not being classified as disabled"); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ indicated that Plaintiff performed a "large amount" of physical activity around his yard and his garage. (AR 28.) However, to the extent the ALJ discounted Dr. Carlson's opinions based on that, the record is devoid of what activity Plaintiff was doing. Without evidence that Plaintiff was lifting and/or carrying a significant amount of weight, that does not undermine Dr. Carlson's opinion that Plaintiff could not do the heavy lifting required of being an iron worker.

21

Similarly, without evidence that whatever "large amount" of work Plaintiff was doing consisted of long periods of sitting, that does not undermine Dr. Carlson's opinions that Plaintiff could not, due to back pain, engage in prolonged sitting. *Moore*, 743 F.3d at 1121 (ALJ must build logical bridge from the evidence to his conclusion). If the ALJ was concerned about what Plaintiff was doing, he should have asked Plaintiff. Without more information, the ALJ's assumption that Plaintiff's activity was inconsistent with Dr. Carlson's opinions is merely speculation and not supported by substantial evidence. *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("…a decision based on speculation is not supported by substantial evidence."); *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995)(claimant was entitled to a decision based on the record rather than a "hunch").

Plaintiff also points out that where the record indicates he was doing a "large amount" of physical activity, he had increased pain in both shoulders. (AR 686.) The record documents the same over and over again. He aggravated his pain when shoveling. (AR 698.) He aggravated his left shoulder pain when he reached for a tube at the drive through bank. (AR 545, 547.) He had a substantial increase in pain in both shoulders after washing a car. (AR 549.) He had marked increase in pain after using a snowblower. (AR 294, 316.) Plaintiff concludes that the fact that he continuously injured himself or had significant increases in pain when trying to perform exertional activities, particularly using his arms/shoulders, bolsters Dr. Carlson's opinions that he should be limited in how much weight he lifts/carries. *Scrogham*, 765 F.3d at 700 ("[A]t least one of the activities was a precipitating event that led to one of Mr. Scrogham's doctor visits. Surely, this type of ill-advised activity cannot support a conclusion that Mr. Scrogham was capable of performing full-time work.")

In response, the Commissioner argues that the ALJ found Dr. Carlson's opinions unpersuasive because he relied heavily on Plaintiff's subjective statements. However, the ALJ did not indicate that he discounted Plaintiff's statements because Dr. Carlson considered Plaintiff's subjective reports. (AR 28.) Rather, the ALJ specifically indicated that Dr. Carlson's opinions were not supported by "enough" objective evidence, not that those opinions were not supported by <u>any</u> objective evidence. (AR 28.) The Commissioner cannot rely on an analysis that the ALJ did not provide in his decision. *Hanson*, 760 F.3d at 762.

The Commissioner argues that the ALJ found Dr. Carlson's opinions not persuasive because they were not consistent with evidence in the record. However, the ALJ cannot merely summarize the evidence, as a whole, and then conclude that Dr. Carlson's opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined Dr. Carlson's opinions and why. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

The Commissioner argues that Dr. Carlson's opinion that Plaintiff could not sit for any length of time was essentially an opinion Plaintiff was disabled and the issue of disability is reserved to the Commissioner. Clearly, the Commissioner's argument is built on the fallacy that the opinion Plaintiff could not sit for any length of time was equal to an opinion that Plaintiff was disabled. Sitting is a work-related function, opining a claimant is disabled is not a work-related function. The Commissioner's argument fails.

Clearly, the ALJ's analysis of the weight to be given to the medical opinions is legally insufficient and not supported by substantial evidence. Thus, remand is required.

Next, Plaintiff argues that the ALJ failed to properly analyze his obesity and its effect on

23

his ability to perform basic work-related tasks. If a claimant is obese the ALJ's decision must include a discussion of how obesity was considered in combination with the claimant's other impairments. SSR 19-2p (explaining that those with obesity and other impairments can experience greater limitations than if they just had those other conditions or were just obese); *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The ALJ noted Plaintiff's body mass index (BMI) was greater than 30, indicating obesity, and he found obesity was a severe impairment. (AR 23, 27.) He outlined the requirements that he consider obesity, from SSR 19-2p. (AR 26-27.) He indicated at step 3 that obesity, alone or combined with Plaintiff's other impairments, did not medically equal any of the Commissioner's listed impairments. (AR 23.) Plaintiff argues, however, that the ALJ provided no analysis of whether obesity, combined with Plaintiff's other impairments (particularly back impairments) limited Plaintiff's ability to perform basic work-related tasks, thereby creating additional limitations which should have been included in the ALJ's RFC assessment. By finding Plaintiff's obesity a severe impairment the ALJ, by definition, found that obesity more than minimally affected Plaintiff's ability to perform basic work-related tasks. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1522(a). However, the ALJ's decision includes no limits in the RFC due to obesity. Plaintiff argues that it is inconsistent for the ALJ to find that obesity is a severe impairment yet include no limits in the RFC due to obesity.

In response, the Commissioner argues that the ALJ found the state agency doctors' opinions persuasive and relied on those doctors' opinions, and since those doctors considered Plaintiff's obesity in reaching their opinions, the ALJ's error was harmless. However, the state agency consultants noted Plaintiff's BMI as well as his self-reported height and weight, which was

24

used to calculate that BMI (AR 53, 56, 63), but neither noted that Plaintiff was obese or indicated any consideration of the effect of obesity when evaluating the evidence and offering their opinions. ( AR 53-59, 63-70.) Clearly, the ALJ's failure to discuss the effects of obesity is not relieved by his reliance on the state agency doctors' opinions where there is no evidence those doctors considered or evaluated the effect of obesity. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012)(finding ALJ failed to consider impact of obesity and error was not harmless because the doctors whose opinions the ALJ relied upon merely noted the claimant's height and weight but did not mention the obesity diagnosis or demonstrate they took that diagnosis into account when offering their opinions).

The Commissioner argues, additionally, that the ALJ's error was harmless because Plaintiff did not offer any evidence that obesity increased the effects of Plaintiff's impairments, or that Plaintiff had additional limits beyond those the ALJ assessed. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Brumbaugh v. Saul*, 2012 WL 1100562, *3 (7th Cir. 2021). However, Plaintiff has provided evidence that he had difficulty standing, walking, and sitting. (AR 46, 183.) Once the ALJ found obesity caused some effect on Plaintiff's ability to perform work-related functions, the ALJ was required to explain what those additional limits were and how those were incorporated into the ALJ's RFC assessment.  Accordingly, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ's assessed reaching limits are not supported by substantial evidence. As discussed above, the ALJ indicated that he was persuaded by the non-examining state agency doctors' opinions, and the ALJ adopted most of the limits those doctors opined when assessing Plaintiff's RFC. (AR 27.) The ALJ gave no reasons for discounting those doctors' opinions. However, the state agency doctors opined Plaintiff could occasionally

reach overhead with his left arm, and frequently reach overhead with his right arm. They did not opine as to any limits reaching in any other direction. However, the ALJ found Plaintiff could occasionally reach overhead with both arms, and frequently reach in all other directions with both arms. (AR 23.)

When assessing a claimant's residual functional capacity, the ALJ must point to specific evidence to explain how he reached his conclusions. SSR 96-8p ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) ...."); *Scott*, 647 F.3d at 740. It is not enough to summarize evidence. The ALJ must explain how particular evidence led him to the limitations assessed. *Moore*, 743 F.3d at 1121 (ALJ must build a logical bridge from evidence to conclusions); *Craft*, 539 F.3d at 677-78 (no logical bridge when evidence is recited, not analyzed). Here, the ALJ apparently thought there was some evidence in the record that warranted more limits than the state agency doctors found, but without any explanation it is impossible to trace the ALJ's path of reasoning to understand how he concluded Plaintiff could reach overhead occasionally and all other directions frequently. As Plaintiff notes, the ALJ's error is not harmless because the vocational expert testified that if Plaintiff were limited in reaching, both overhead and all other directions, that would have an impact on the jobs Plaintiff could perform. (AR 51.)

In response, the Commissioner concedes that the ALJ found more restrictive limits than the state agency doctors' opined, but argues that Plaintiff should not complain about that because the additional limits were to Plaintiff's benefit. However, the Commissioner fails to recognize that the ALJ did not find the most restrictive reaching limits that were possible to have found. The ALJ should have explained what evidence supported the limits assessed. Otherwise it is impossible to

be sure that even more limits were not warranted, such as limiting Plaintiff to reaching in all directions, only occasionally, or reaching only rarely, or never.  The ALJ's failure to provide an explanation about how he arrived at the reaching limits he assessed was not harmless because if Plaintiff was further limited reaching, that could have had a significant impact on the jobs Plaintiff could still perform. Therefore, this issue should be clarified on remand.

Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.


Entered: May 6, 2021.


s/ William C.  Lee
William C. Lee, Judge
United States District Court